# PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806

www.pryorcashman.com

**Michael Goldberg**

Direct Tel: 212-326-0244
Direct Fax: 212-798-6338
MGoldberg@PRYORCASHMAN.com

September 12, 2019

**VIA ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: <u>**McKnight v. 65 Dune Road, LLC, et al., Case No. 2:19-cv-04172-MKB-PK**</u>

Dear Judge Brodie:

This firm represents Michael D. McKnight, as Trustee of the Stacia L. McKnight Revocable Trust ("McKnight"), plaintiff in the above-referenced action (the "Action") commenced against 65 Dune Road LLC, The Gaetano Development Corp. and Michael Gaetano (collectively "Defendants"). Pursuant to Your Honor's Individual Practices and Rules and the Court's September 5, 2019 Order, McKnight respectfully submits this letter in response to Defendants' request for a pre-motion conference.

This Action arises out of Defendants' development and eventual sale of a "spec house" in East Quogue, New York to McKnight for nearly $14,000,000 (the "Residence"). Soon after purchasing the Residence, McKnight began identifying numerous construction defects. While addressing those conditions, McKnight also became aware of serious misrepresentations and outright fraud engaged in by each of the Defendants in the marketing and sale of the Residence. Two such instances of Defendants' misconduct are particularly troubling:

*First*, McKnight noticed after taking occupancy that the wood floors in certain areas in the Residence were beginning to delaminate. When the wood flooring manufacturer was contacted, the company revealed that Defendants had already filed a claim related to this issue, and received a significant settlement payment. However, rather than repairing the condition Defendants knew (and the manufacturer conceded) was caused by defective flooring, the Defendants retained the settlement proceeds for themselves, left the defective floors for their unsuspecting buyer, and used face nails to hide the defect. It is expected that discovery (including the deposition of the floor manufacturer) will confirm this fraud, which was alleged in the Complaint upon information and belief.

# PRYOR CASHMAN LLP

Honorable Margo K. Brodie
September 12, 2019
Page 2

*Second*, the Defendants' listings and brochures advertised that the windows and doors throughout the Residence as UV resistant impact glass – critical virtues for an oceanfront house. Given the importance of these qualities (which reduce energy use, protect furnishings and eliminate the need for hurricane shutters/screens or protective coverings), McKnight specifically reconfirmed with the Defendants' broker before making a decision to purchase the Residence that the doors and window were, in fact, UV resistant impact glass. However, when investigating the source of water entering the Residence through what turned out to be specific windows and doors in failure (due to faulty installation and possibly also corrosion stemming from Defendants' failure to properly maintain the windows throughout construction), McKnight was advised that the windows and doors were neither UV rated nor impact glass. Moreover, it appears that Michael Gaetano and perhaps other Defendants may have discarded the wood panels required by Town Code and stored in the garage (panels that that would be affixed to the windows and doors during hurricanes) because their presence would have revealed that the windows and doors were not as advertised.

McKnight also recognized numerous other construction defects after taking occupancy. Given the aforementioned conduct, it will come as no surprise that Defendants ignored their contractual and statutory obligations – and disregarded reputable business practices – refusing McKnight's pleas to address these issues. Defendants subsequently ignored each of the NYGBL Section 777-a Notices sent by this office over the course of the past six months. Accordingly, the instant request for an opportunity to file a motion to dismiss should be seen as part and parcel of Defendants' orchestrated effort to avoid a reckoning for their breaches and egregious misconduct. This is further confirmed by the fact that the grounds offered by Defendants in support of their Fed. R. Civ. P. 12(b)(6) motion to dismiss lack any semblance of legal merit.

Principally, Defendants erroneously argue that Michael Gaetano cannot be held personally liable because he signed the Contract of Sale in his corporate capacity. However, even a cursory review of the complaint confirms that Mr. Gaetano is not being sued for breach of the contract. Rather, he is being sued for his tortious conduct. Defendants are also aware of well-settled law which provides that a "corporate officer [or principal] who participates in the commission of a tort [as alleged in the Complaint filed by McKnight] may be held individually liable regardless of whether the officer acted on behalf of the corporation in the course of official duties." *North Shore Architectural Stone, Inc. v. American Artisan Constr.*, 153 A.D.3d 1420, 1421-22 (2d Dep't 2017); *see also Liberty Mutual Ins. Co. v. Fast Lane Car Service, Inc.*, 681 F.Supp.2d 340, 351 (E.D.N.Y. 2010). If the facts as alleged are proven true, settled law confirms that Michael Gaetano cannot avoid responsibility for the fraud he perpetrated simply by claiming that he signed the contract and acted in his capacity as an officer of a company.

Defendants' other grounds for a motion to dismiss are similarly futile. Specifically, the cause of action for a breach of the *Housing Merchant Implied Warranty* is not barred by the statute. Each of the defects are latent, and could not have been discovered prior to taking title to the Residence. For example, only when water started entering the Residence in various locations when

# Pryor Cashman LLP

Honorable Margo K. Brodie
September 12, 2019
Page 3

it rained did McKnight discover (i) the faulty installation and maintenance of the doors and windows and (ii) the failure to include a waterproof membrane between the outer sheathing and interior walls of the Residence (a standard building practice). Additionally, only when removing tile which started to fall after having been improperly affixed to the firebox above the fireplace did McKnight discover that the firebox itself was improperly constructed in violation of local building code. Defendants' contention that these types of defects could have been easily observed, and thus are barred by statute, highlights the frivolity of their position.

Lastly, Defendants' contention that McKnight's fraud claims are duplicative of its breach of contract and breach of warranty claims is similarly unavailing. Even a cursory review of the Complaint confirms that there is no overlap or duplication. McKnight's breach of contract claims are specifically limited to issues such as defective lights, a non-working stove, faulty technology systems and missing pool equipment, all of which are specifically covered by the express terms of the Contract of Sale. McKnight's breach of warranty claims relate to improper maintenance and installation of windows and doors, failure to install a waterproof membrane between the outer sheathing and interior walls of the Residence and improper installation of the firebox, each of which is covered by NYGBL Section 777-a. And McKnight's fraud claims relate to the entirely separate misconduct referenced above. These material misrepresentations and omissions were definitively collateral to the parties' Contract of Sale, and thus are not duplicative of McKnight's contract or warranty claims. *See Did-it.com v. Halo Group, Inc.*, 174 A.D.3d 682, 682 (2d Dep't 2019) (finding fraud and contract claims not duplicative as the representations were collateral to, and served as inducement to enter into, the contract); *Richmond Shop Smart, Inc. v. Kenbar Development Ctr., LLC*, 32 A.D.3d 423, 424 (2d Dep't 2006); *Nash v. The New School*, No. 05 Civ. 7174, 2009 WL 1159116, at * (S.D.N.Y. Apr. 29, 2009).

McKnight is mindful that Courts freely grant defendants leave to file motions to dismiss. However, in this case the bases for the motion do not withstand even a perfunctory level of scrutiny. Accordingly, this Court should deny Defendants' request for a pre-motion conference and/or to file a motion to dismiss.

Respectfully submitted,

Michael Goldberg

cc: Michael D. McKnight