UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
MICHAEL D. MCKNIGHT, *as Trustee of the
Stacia L. McKnight Revocable Trust*,

                       Plaintiff,           **MEMORANDUM & ORDER**
                                                                         19-CV-4172 (MKB)
                      v.

65 DUNE ROAD LLC, THE GAETANO
DEVELOPMENT CORP., MICHAEL GAETANO,
and STEVEN GAETANO,

                       Defendants.
---------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

       Plaintiff Michael D. McKnight, in his capacity as Trustee of the Stacia L. McKnight Revocable Trust, commenced the above-captioned action concerning real property on July 18, 2019, filed an Amended Complaint on November 8, 2019, and filed a Second Amended Complaint ("SAC") on November 7, 2022, against Defendants 65 Dune Road, LLC ("65 Dune"), the Gaetano Development Corporation ("Gaetano Development"), Michael Gaetano, and Steven Gaetano, asserting claims of breach of contract, breach of the implied warranty pursuant to New York General Business Law § 777-a, breach of fiduciary duty, fraud, fraudulent inducement, and fraudulent concealment. (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 15; SAC, Docket Entry No. 65.) Plaintiff seeks to recover for alleged defects in the construction of a newly built home by Defendants (the "Residence"). (*See* SAC.)

       On May 4, 2024, Defendants moved to reopen discovery after "newly discovered evidence relating to the windows" of the Residence became available and "to issue a subpoena to the entity that manufactured the glass used in the windows installed" at the Residence. (Defs.' Mot. to Reopen Discovery ("Defs.' Mot.") 1, Docket Entry No. 109.) On May 10, 2024, after a

hearing, Magistrate Judge Peggy Kuo denied Defendants' motion to reopen discovery (the "Discovery Order"). (Min. Entry & Order dated May 10, 2024; Tr. of Hr'g dated May 10, 2024 ("Tr."), Docket Entry No. 110.) On May 24, 2024, Defendants filed a letter objecting to the Discovery Order, asking the Court to "set aside this Order" because it precludes Defendants "from correcting a factual issue which goes to the heart of a claim asserted by Plaintiff." (Defs.' Objs. to Discovery Order ("Defs.' Objs.") 1, 3, Docket Entry No. 111.) On May 28, 2024, Plaintiff filed a letter in response to Defendants' objections. (Pl.'s Resp. to Defs.' Objs. ("Pl.'s Resp."), Docket Entry No. 112.) For the reasons set forth below, the Court affirms Judge Kuo's Discovery Order.

### I. Background

The Court assumes familiarity with the facts and procedural background as set forth in the Court's prior decision (the "November 2020 Decision"). (Nov. 2020 Decision, Docket Entry No. 23.) The Court summarizes only the relevant facts and procedural history.

#### a. Factual background

In 2014, 65 Dune "retained and supervised" a general contractor to build an oceanfront house at 65 Dune Road, East Quogue, New York in accordance with architectural designs from Gaetano Development, Michael Gaetano and/or Steven Gaetano. (SAC ¶¶ 9–11, 14.) Around September of 2015, the house was advertised as having been built with certain "specifications," including "that the windows and doors were made of 'UV Resistant Impact Glass,'" through "marketing materials . . . prepared by the listing broker, as [an] agent for 65 Dune, and . . . approved by[] 65 Dune, Gaetano Development, Michael Gaetano, and Steven Gaetano." (*Id.* ¶¶ 13–14.) Relying on the marketing materials and on "specific assurances from Defendants' brokers," Plaintiff purchased the Residence for $13,750,000.00. (*Id.* ¶¶ 15–16.) In particular, a real estate broker for 65 Dune, "specifically reconfirmed in or about July [of] 2018 that the

2

windows and doors were hurricane resistant" and "made numerous comments about the unique nature of the Residence, boasting the fact that it was built to the new and revised building code." (*Id.* ¶ 55.)

On July 18, 2018, the parties signed a contract for purchase of the Residence (the "Contract"). (*Id.* ¶ 16.) Michael Gaetano signed the Contract on behalf of 65 Dune and Gaetano Development. (*Id.* ¶¶ 17–19.) The Contract contained the following warranty:

> IMPLIED WARRANTY. Purchaser and Seller acknowledge that the premises to be conveyed is a newly constructed property. Purchaser acknowledges and agrees that the only warranty in connection with this newly constructed property is the *Housing Merchant Implied Warranty* under Section 777-a of the New York General Business Law, which shall be provided by The Gaetano Development Corp., an active New York business corporation. Purchaser acknowledges that Seller has made no additional warranties to Purchaser with respect to this newly constructed property, and no additional warranties will be provided by Seller.

(Suppl. Rider to Contract 12–13, annexed to SAC as Ex. A, Docket Entry No. 65-1.)

Plaintiff "took possession of the Residence" and "began identifying significant defects in the construction of the Residence and breaches of the Contract and the warranties contained therein." (SAC ¶ 20.) Plaintiff provides a partial list of defects "[b]y way of example," including defects in the windows, which Plaintiff alleges "are not appropriate for an oceanfront property and were installed incorrectly, leaked, have corroded due to poor maintenance during construction (thereby voiding the warranty), and at least several of the windows are 'in failure'" and "were neither UV resistant nor impact glass, critical features advertised by Defendants and their brokers." (*Id.* ¶ 21.) Specifically, Plaintiff alleges that the T-200 Series windows installed in the Residence were falsely advertised as "impact glass" because they do not contain the appropriate interlayer required to be considered impact resistant. (Defs.' Objs. 1; Pl.'s Resp. 2.)

3

For the T-200 Series windows installed in the Residence, Viracon manufactured the glass, Arcadia Architectural Products, Inc. ("Arcadia") manufactured the frames, and Architectural Industries "put the glass and the frame[s] together." (Defs.' Mot. 1–2; Pl.'s Resp. 2; Tr. 7:6–13, 10:25–11:6.) In 2021, Plaintiff subpoenaed Arcadia,[1] who produced the approved set of shop drawings for windows installed at the Residence. (Pl.'s Resp. 2; Tr. 7:14–23.) Arcadia shop drawings indicate that the interlayer of the glass installed at the Residence was 0.035 inches. (Arcadia Shop Drawing annexed to Defs.' Objs. as Ex. B, Docket Entry No. 111-2.) Experts for both parties relied on an 0.035-inch interlayer in reaching their conclusions. (Defs.' Mot. 1; Tr. 21:13–17; *see also* Pl.'s Resp. 3.)

b.  **Procedural background**

Plaintiff commenced this action on July 18, 2019 and filed an Amended Complaint on November 8, 2019. (Compl.; Am. Compl.) On December 6, 2019, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Notice of Defs.' Mot. to Dismiss, Docket Entry No. 20.) On November 16, 2020, the Court granted Defendants' motion in part, dismissing the breach of contract claim against 65 Dune, the breach of warranty claims concerning the deck refrigerator and ice machine, and the breach of fiduciary duty claims. (Nov. 2020 Decision.) Plaintiff filed the SAC on November 7, 2022, alleging additional claims against Steven Gaetano. (SAC.)

The parties engaged in discovery and completed fact discovery on April 15, 2024. (Order dated Mar. 14, 2024.) The parties proceeded with expert discovery, during which Viracon provided documents and represented that the minimum interlayer supplied for glass used in the Residence was 0.060 inches. (Defs.' Objs. 2; *see also* Viracon Document annexed to Defs.'

---

[1] Neither party subpoenaed Viracon. (*See* Pl.'s Resp. 2.)

Objs. as Ex. C, Docket Entry No. 111-3.) Based on this new information, on May 4, 2024, Defendants moved to reopen fact discovery "for the limited purpose of authenticating and correcting information regarding the interlayer of the T-200 windows." (Defs.' Objs. 2.) On May 10, 2024, Judge Kuo denied Defendants' motion, finding that fact discovery should not be reopened because (1) Defendants knew or had access to the information as developers of the Residence and the fact that they did not identify this as a "potential issue to explore during the course of the five years that discovery ha[d] been ongoing [was] not a reason to reopen it now"; and (2) the document obtained from Viracon could not be authenticated and therefore did not contradict the Arcadia shop drawing. (Discovery Order; Tr. 29:1–31:2 ("[Y]ou believe it's incorrect information, but I have no basis for actually finding that it is incorrect information. . . . So you can move forward with the evidence that's been developed during the five years of discovery."); *see also id.* at 18:16–23, 20:2–16.) On May 24, 2024, Defendants filed objections to the Discovery Order, and Plaintiff responded on May 28, 2024. (Defs.' Objs.; Pl.'s Resp.)

## II. Discussion

### a. Standard of review

A magistrate judge is authorized "to make findings as to non-dispositive pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were 'clearly erroneous or contrary to law.'" *United States v. Town of Oyster Bay*, No. 14-CV-2317, 2022 WL 4485154, at *2 (E.D.N.Y. Sept. 27, 2022) (quoting *Storms v. United States*, No. 13-CV-811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014)); *see also Sampedro v. Silver Point Cap., L.P.*, 958 F.3d 140, 142 & n.1 (2d Cir. 2020) (affirming district court's application of "clear error" review to magistrate judge's discovery order). An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,

5


77 F.4th 74, 90 (2d Cir. 2023) (quoting *Atl. Specialty Ins. Co. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63 (2d Cir. 2019)); *United States v. Dumitru*, 991 F.3d 427, 436 (2d Cir. 2021) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)) (same).  An order "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. County of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y. 2022) (quoting *Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014)).  Under this highly deferential standard, "magistrate judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 219 (E.D.N.Y. 2021) (citing *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009)).  Therefore, "a party seeking to overturn or modify a discovery order [by a magistrate judge] bears a heavy burden." *Macchia v. ADP, Inc.*, --- F. Supp. 3d ---, ---, 2024 WL 91398, at *3 (E.D.N.Y. Jan. 9, 2024); *see also Delgado v. Donald J. Trump for President, Inc.*, No. 19-CV-11764, 2024 WL 3639541, at *1 (S.D.N.Y. Aug. 1, 2024) (quoting *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, No. 02-CV-795, 2005 WL 551092, at *1 (S.D.N.Y. Mar. 9, 2005)) (same); *In re Alpene, Ltd.*, No. 21-MC-2547, 2023 WL 5237336, at *4 (E.D.N.Y. Aug. 15, 2023) (quoting *Wager v. G4S Secure Integration, LLC*, No. 19-CV-3547, 2021 WL 293076, at *2 (S.D.N.Y. Jan. 28, 2021)) (same).  When a party serves and files objections to a magistrate judge's decision on "a pretrial matter not dispositive of a party's claim or defense" within fourteen days of that decision, "[t]he district judge in the case must consider [those] timely objections" to the magistrate judge's decision, "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (noting that Fed. R. Civ. P. 72(a) "requires a district court to consider a party's timely objections to a magistrate judge's order deciding a 'pretrial matter not dispositive of a party's claim

6

or defense' and to 'modify or set aside any part of the order that is clearly erroneous or is contrary to law'" (quoting *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008))).

### b. The Court declines to set aside Judge Kuo's Discovery Order

Defendants object to the Discovery Order because it precludes Defendants "from correcting a factual issue," which is central to Plaintiff and Defendants' arguments and "has been relied upon by experts on both sides." (Defs.' Objs. 1.) In support of their motion to set aside Judge Kuo's order, Defendants argue that Judge Kuo erred in concluding that "(1) Defendants should have explored this issue prior to the close of fact discovery; and (2) there was no basis to show that the parties were relying on incorrect information." (*Id.* at 3.)

Plaintiff argues that the Court should "deny Defendants' objection and their request to reverse the [Discovery Order]" because "Judge Kuo did not abuse her discretion in denying" Defendants' motion, "[n]or was her decision clear error or contrary to law." (Pl.'s Resp. 3.)

Rule 16(b) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *Emamian v. Rockefeller Univ.*, 823 F. App'x 40, 44 (2d Cir. 2020) ("Under Federal Rule of Civil Procedure 16(b)(4), a discovery schedule set by the court may be modified only for 'good cause,' which 'depends on the diligence of the moving party.'" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000))). "A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." *Su v. Versa Cret Contracting Co.*, No. 21-CV-5697, 2024 WL 1704695, at *5 (E.D.N.Y. Apr. 19, 2024) (quoting *Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511, 514 (E.D.N.Y. 2018)); *6340 NB LLC v. Cap. One, N.A.*, No. 20-CV-2500, 2024 WL 897000, at *3 (E.D.N.Y. Mar. 1, 2024) (same). "[W]hen a party has had 'ample time in which to pursue the discovery that it now claims is essential,' a district court has

7

broad discretion to deny a request for further discovery." *Rosado v. Maxymillian*, No. 20-3965, 2022 WL 54181, at *2 (2d Cir. Jan. 6, 2022) (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985)); *Jackson v. Fed. Exp.*, 766 F.3d 189, 199 (2d Cir. 2014) (quoting *Burlington*, 769 F.2d at 927); *Trebor Sportswear Co., Inc. v. Ltd. Stores, Inc.*, 865 F.2d 506, 511–12 (2d Cir. 1989) (observing that the trial court "may properly deny further discovery" when a party had "a fully adequate opportunity for discovery").

Courts in this Circuit apply the following six-part test to analyze a request to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the nonmoving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*See, e.g.*, *Su*, 2024 WL 1704695, at *5 (quoting *Moroughan*, 320 F. Supp. 3d at 515); *6340 NB*, 2024 WL 897000, at *3 (same); *Moroughan*, 320 F. Supp. 3d at 515 (quoting *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV–776, 2008 WL 441526, at *3 (E.D.N.Y. Sept. 24, 2008)).

### i. A trial is not imminent

A trial in this action is not imminent because the parties have not yet began briefing their cross-motions for summary judgment, (*see* Pl.'s Mot. for Pre-Mot. Conf., Docket Entry No. 115; Defs.' Mot. for Pre-Mot. Conf., Docket Entry No. 116), and no trial date has been set. Accordingly, the first factor weighs in favor of Defendants. *See Trott v. Deutsche Bank, AG*, No. 20-CV-10299, 2024 WL 1994342, at *1 (S.D.N.Y. May 6, 2024); *Moroughan*, 320 F. Supp. 3d at 515; *Pharmacy*, 2008 WL 4415263, at *4; *cf. Spencer v. Int'l Shoppes, Inc.*, No. 06-CV-2637, 2011 WL 3625582, at *2 (E.D.N.Y. Aug. 16, 2011) (finding this factor to weigh against reopening discovery since trial was already scheduled).

8

### ii. Plaintiff opposes the motion to reopen discovery

Defendants concede that Plaintiff opposes the motion. (Defs.' Objs. 3; *see also* Pl.'s Resp. 1.) Accordingly, the second factor weighs in favor of Plaintiff. *Moroughan*, 320 F. Supp. 3d at 515; *cf. Pharmacy*, 2008 WL 4415263, at *4 (finding that, although the defendant opposed the request to reopen discovery, the basis for such opposition was "unavailing").

### iii. Reopening discovery would prejudice Plaintiff

Defendants argue that reopening discovery would not prejudice Plaintiff because "the parties only just recently exchanged expert reports," and Defendants are only asking for "limited discovery to correct information that has been relied upon by both sides." (Defs.' Objs. 3.) In addition, Defendants argue that reopening discovery would benefit Plaintiff because it would "provide the impact resistance Plaintiff claims [he is] entitled to." (*Id.*)

Plaintiff argues that he will be prejudiced if discovery is reopened. (Pl.'s Resp. 3.) In support, Plaintiff argues that reopening discovery will delay the case for an additional four to six months because the parties will (1) "need to wait for Viracon to comply with a subpoena" and produce responsive documents, (2) analyze those documents, (3) take Viracon's deposition, (4) "re-depose [at least two] witnesses who previously testified on the issues and characteristics of the glass and windows," (5) take the deposition of nonparty Arcadia, who produced the documents containing the current 0.035-inch interlayer value, and (6) after all depositions are taken, "prepare and serve amended expert reports to address this issue." (*Id.*) In addition, Plaintiff argues that reopening discovery "will force both parties to incur tens of thousands of dollars in additional legal fees." (*Id.*)

The Court finds that reopening discovery would prejudice Plaintiff because (1) it would further delay an already five-year old case, *see Emamian*, 823 F. App'x at 43 ("[R]eopen[ing] discovery for the purposes of pursuing new damages theories does not amount to 'good cause'

9

necessitating a reversal of the district court's rulings, particularly in light of the prejudice to [the defendant] that would have ensued from additional delay in the already-protracted case."); *Moroughan*, 320 F. Supp. 3d at 516 ("The prejudice to the [p]laintiff here is not only the further postponement of this six-year old case, but the toll on the memories of witnesses as this case lags."); and (2) it would cause Plaintiff to incur additional cost and expenses as a result of additional subpoenas, depositions, and possible amended expert reports, *see Moroughan*, 320 F. Supp. 3d at 516 ("There is no doubt that re-opening discovery will cause [the] plaintiff to incur costs and expenses associated with reviewing documents which [the defendant] is requesting as well as preparation for and attendance at requested depositions of the [individuals] responsible for the [discovery information]."); *see also Su*, 2024 WL 1704695, at *5 (noting that granting the defendants' "request would significantly delay trial, and [the d]efendants may discover from the documents that certain individuals need to be deposed, or that certain factual issues warrant further inquiry" and that "[e]ach of these additional tasks, when viewed together, would incur considerable time and cost to the parties"); *cf. Trott*, 2024 WL 1994342, at *1 (finding that the defendant would "not be prejudiced by a limited reopening of discovery" because the plaintiffs did "not seek to take any new depositions, file any expert reports, or delay any pending motions or orders; rather, they [sought] only to compel production of a very limited, specific set of documents"). Accordingly, the third factor weighs in favor of Plaintiff. *Su*, 2024 WL 1704695, at *5–6; *Moroughan*, 320 F. Supp. 3d at 516.

> **iv. Discovery from Viracon was foreseeable and Defendants were not diligent in seeking this discovery**

Defendants argue that "[t]he need for this additional discovery could not have been foreseen, despite diligent efforts of both sides during fact discovery." (Defs.' Objs. 3.) In support, Defendants argue that "[t]here was no reason for any party to doubt the accuracy of the

10

Arcadia shop drawings, and both sides have relied on the incorrect 0.035 inch interlayer." (*Id.*) In addition, Defendants argue that, given the "numerous different materials and products with numerous different manufacturers," it would have been "impossible to verify the production specs of every single product installed" at the Residence. (*Id.*)

Plaintiff argues that discovery from Viracon was foreseeable because Defendants are the developers of the Residence and "have known from the beginning that Viracon manufactured the glass for the windows" installed at the Residence. (Pl.'s Resp. 2.) In addition, Plaintiff argues that Defendants were not diligent because they "knew of and could have subpoenaed Viracon at any point during fact discovery" but "elected not to" and "did not even identify Viracon as a party with knowledge in their disclosures or responses to discovery demands, including their interrogatory responses." (*Id.*)

The Court finds that discovery from Viracon was foreseeable and that Defendants were not diligent in their efforts seeking this discovery. Defendants did not investigate the issue of the actual T-200 Series window glass interlayer or request to subpoena or depose Viracon until a month after fact discovery closed, (*see* Tr. 21:5–23:15; Order dated Mar. 14, 2024), despite (1) Defendants having extensive knowledge regarding the materials used to construct the Residence as the developers and architects of the Residence, (*see* SAC ¶¶ 10–11); (2) the parties engaging in discovery for nearly four years, (Min. Entry dated December 4, 2020; Order dated Mar. 14, 2024); and (3) Plaintiff subpoenaing Arcadia, the window frame manufacturer, in 2021, (*see* Pl.'s Resp. 2). The only explanation that Defendants provide for their failure to investigate was that neither party knew "there was an issue with a 0.035 interlayer" before now and that both parties were "just using 0.035 inches and debating whether or not that reached impact glass." (Tr. 22:5–7, 27:8–10.) However, as Judge Kuo told Defendants' counsel:

11

> If you're now saying that that's not what was installed, that something else was installed, that's something that your client should have brought to your attention. There's no reason that you would have to rely on something that was incorrect because your client is the one who made the installation. So I don't find that this is something that is such a surprise at the end of everything.

(*Id.* at 27:21–28:4.)  Judge Kuo elaborated that Defendants knew of and were on notice that Plaintiff was alleging that the 0.035-inch interlayer was inadequate and, if Defendants disagreed, that "is something that [they] could have done during the course of discovery." (*Id.* at 26:12–20.)

Accordingly, the fourth and fifth factors weigh in favor of Plaintiff.  *See Burlington*, 769 F.2d at 927 (denying additional discovery when the plaintiff "had ample time in which to pursue the discovery that it now claims is essential"); *Volpe v. Ryder*, No. 19-CV-2236, 2022 WL 16553231, at *2 (E.D.N.Y. Oct. 31, 2022) (denying the plaintiff's request to reopen discovery when "there ha[d] been more than ample opportunity for discovery and the retention of experts for trial"); *Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 53 (S.D.N.Y. 2020) (finding that the plaintiff's "failure to explain why this discovery could not have been sought prior to the end of the discovery period ultimately dooms its request to obtain the discovery now"); *Moroughan*, 320 F. Supp. 3d at 516–25 (finding that the fourth and fifth factors weighed against reopening discovery because, *inter alia*, the parties knew about the discovery sought for at least three years and "[a] reasonable litigator could have and should have foreseen the need for the discovery now sought"); *see also Su*, 2024 WL 1704695, at *7 (finding that the fourth and fifth factors weighed against reopening discovery because the defendants "had ample time and opportunity to assess the credibility of their employees by taking said employee's depositions," yet "declined to depose *any* workers to date").

12

### v. It is unclear whether additional discovery will lead to relevant evidence

Defendants argue that the additional discovery sought contains relevant information because it will provide the correct interlayer value, which Defendants argue is an "essential fact" that "goes to the heart of a claim asserted by Plaintiff." (Defs.' Objs. 1, 3.) In support, Defendants argue that the additional discovery will show that the thinnest interlayer of the T-200 windows installed in the Residence is 0.060 inches, which Defendants argue "meets the hurricane and impact resistance qualities Plaintiff alleges [he is] entitled to based on promotional materials for the home." (*Id.* at 3.)

Plaintiff argues that additional discovery will not contain relevant information because the "single document Defendants rely upon in seeking additional discovery is an undated piece of paper" that is "not an invoice, an order form, or a shop drawing," and does not indicate "that it bears any relevance to the glass ultimately purchased by Defendants and/or installed at the [R]esidence." (Pl.'s Resp. 2–3.) In addition, Plaintiff argues that the "glass specifications in the Viracon document and the Arcadia [s]hop [d]rawings differ in multiple respects," which Plaintiff argues likely means that the document "is simply an early draft of possible glass specifications, and thus [is] irrelevant." (*Id.* at 3.) Finally, Plaintiff argues that windows with a 0.060-inch interlayer are not automatically impact resistant and, therefore, "the information being sought by Defendants after the close of discovery is not even dispositive." (*Id.* at 3 n.1.)

The Court finds that it is unclear whether additional discovery will lead to relevant evidence. Although Defendants argue that discovery will lead to the "correct" interlayer value, as Judge Kuo noted, there is "no basis for actually finding that [the 0.035 interlayer value] is incorrect" because the document obtained from Viracon "has no date" and does not "say what [the document] is." (Tr. 5:2–7, 18:18–20, 30:19–21.) Judge Kuo agreed with Plaintiff that, because the document does not "self-identify," it could represent proposals or initial bids from

13

Viracon as opposed to actual documentation of what was installed at the Residence. (*Id.* at 18:21–23 ("Is it a proposal? Is it for this? You know, when was this document created? At what stage of the construction?"); *id.* at 29:11–18 ("I think that [Plaintiff's counsel] is correct, that [the document] may well be initial bids.").) Because the Viracon document is undated and does not self-identify, Defendants can only speculate that additional discovery will produce relevant evidence that is distinct from the evidence already obtained from discovery. *See Pharmacy*, 2008 WL 4415263, at *5 ("When a party merely speculates as to what evidence would be produced upon further discovery, a court is correct in denying the party's request to allow more discovery." (quoting *Harris v. Comput. Assocs. Int'l Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001))); *see also Humphreys v. N.Y.C. Health & Hosps. Corp.*, No. 16-CV-9707, 2023 WL 155446, at *4 (S.D.N.Y. Jan. 11, 2023) (finding that the plaintiff did "not 'present extrinsic evidence tending to show that [the documents] would have been favorable to [her] case'" (alterations in original) (citations omitted)). If Defendants are correct, then the requested discovery would likely lead to relevant evidence regarding the correct interlayer used in the T-200 Series windows installed at the Residence. However, without more information, it is unclear whether additional discovery will lead to relevant evidence. *See Moroughan*, 320 F. Supp. 3d at 525 ("The [c]ourt is not in a position to [draw a conclusion regarding the relevance of additional requested discovery] without more information, although the [c]ourt does not doubt that some of the information may be pertinent."). Accordingly, the sixth factor is neutral. *Id.*

### vi. Balancing the factors

Balancing all of the factors, the Court finds that Defendants have not shown good cause to reopen discovery. *See 6340 NB*, 2024 WL 897000, at *3–4 (denying the defendant's motion to reopen discovery because, *inter alia*, the plaintiff would "be prejudiced if it is forced to incur substantial additional costs and expenses, and it is unclear whether any of this additional

14

discovery will bear more fruit relating to the claims, counterclaims, or defenses in this case"); *Saray*, 335 F.R.D. at 52 (denying the plaintiff's motion to reopen discovery because, although trial was not imminent and the discovery would arguably yield relevant evidence, all other factors counseled against reopening discovery). *But see Moroughan*, 320 F. Supp. 3d at 525 (finding that, although the court did "not condone the . . . defendants' actions here with regard to the lack of diligence in seeking the discovery which is the subject of this motion," "the circumstances of this case d[id] not warrant the 'drastic remedy' of preclusion of this discovery").

### III. Conclusion

For the foregoing reasons, the Court affirms Judge Kuo's Discovery Order.

Dated: August 26, 2024
       Brooklyn, New York

SO ORDERED:

                        s/ MKB
                 MARGO K. BRODIE
                 United States District Judge